JAMES J. COOPER *vs.* MICHAEL CASHMAN & another.

Essex.    November 8, 1905. — January 3, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence.    Animal.*

In an action by a teamster against a contractor employing him, for injuries from the kick of a horse alleged to be vicious, it appeared that the plaintiff was fifty-one years of age and had worked in stables from the age of eighteen or twenty years, that the horse which kicked him was one of a large number which the defendant brought at one time to his stable from Canada or the West, that the plaintiff was the only person who drove this horse from the time he arrived until the time of the accident, about two months later, and that during that time the plaintiff groomed, harnessed and unharnessed the horse, taking up his hind feet and cleaning them, and sometimes fed him, that he never saw the horse do anything that he would call vicious, and that he liked him and had told the defendant that he was a good, clever horse, that the only previous misbehavior on the part of the horse while in the possession of the defendant was that on the day of his arrival, when there was a crowd of spectators about him, he kicked a man, not a horseman, who went into his stall carrying a pail, that this incident was a matter of common knowledge about the stable, and that thereafter the horse never was known to kick anybody until the time of the accident. The plaintiff testified that he did not know of the previous kicking, but there was no evidence that the defendant believed or had reason to believe that the plaintiff was ignorant of what had happened. *Held*, that the failure of the defendant to tell the plaintiff of the previous kicking was not evidence of negligence on the part of the defendant.

In an action by a teamster against a contractor employing him, for injuries from the kick of a horse, which the plaintiff drove, harnessed, groomed and sometimes fed during the two months that he had been in the defendant's possession, there was evidence that, a short time before the accident, a veterinary surgeon was

asked by the defendant "if he knew any reason why the horse should be poor, and not take fat and look a little better," and that, after looking him over, he inquired whether he was a nervous horse and was answered in the negative, after which he said, "I should call him a nervous, vicious horse." He further gave his opinion that the horse had no special ailment. *Held,* that there was nothing in this testimony having any tendency to show that the horse was likely to kick, or that it was the duty of the defendant to tell the plaintiff that the horse was dangerous.

TORT by a teamster, against the members of a firm of contractors employing him, for injuries from the kick of a horse of the defendant alleged to be vicious. Writ dated January 17, 1903.

In the Superior Court the case was tried before *Mason,* C. J., who at the close of the plaintiff's evidence ruled that the plaintiff was not entitled to recover, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

*H. J. Edwards,* (*R. E. Harding* with him,) for the plaintiff.

*C. M. Pratt,* for the defendants.

KNOWLTON, C. J. The question in this case is whether there was evidence of negligence on the part of the defendants, which made them liable to the plaintiff for the kick of a horse by which he was injured.

If one knowingly keeps a vicious or dangerous animal which is accustomed to attack and injure mankind, he is *prima facie* liable for injuries done by it, without proof of negligence as to the manner of keeping it. The negligence on which the liability is founded is keeping such an animal with knowledge of its propensities. *Popplewell* v. *Pierce,* 10 Cush. 509.

There was no evidence tending to show that the defendants' horse was an animal of the kind to which this rule of law applies, and the declaration does not contain averments founded on the rule. In his declaration the plaintiff says in substance that he was a teamster, that it was a part of his duty to take care of horses which he drove for the defendants, and that one of these horses kicked him as he was entering its stall, in the exercise of due care, and that the defendants, "well knowing the vicious and treacherous nature of said horse, were grossly careless and negligent in not informing said plaintiff of the vicious and treacherous nature of said horse." The gist of the action is the alleged negligence of the defendants in

failing to give the plaintiff information and warning necessary for his protection.

The plaintiff, a man fifty-one years of age, had worked in stables, according to his own testimony, all his life. Expressing the same thing in another way, he said he began at the age of eighteen or twenty years. No one could know better than he the risk of injury in the care of horses, and how to avoid it. The horse that injured him was one of a large number which the defendants brought to their stable from Canada or the West, at one time, in March, 1902. The defendants at that time knew nothing particularly about the habits or peculiarities of any of them, except that which the plaintiff could judge by observation as well as they could. Everybody knows that there is some risk, and that care is necessary, in feeding and grooming and managing such a lot of strange horses.

The evidence tended to show that the plaintiff was the only person who drove this horse after the defendants got him, up to the time of the accident on May 26, and that he used him with another in a team during most of that period, grooming him, harnessing and unharnessing him, taking up his hind feet and cleaning them, and sometimes feeding him. He testified that he never saw the horse do anything that he would call vicious, and that he told one of the defendants before the accident that he was a good, clever horse, a good work horse. He also said that he liked the horse, that he was fond of him, and named him after a young fellow in the house.

The only evidence that the horse ever did anything unkind was, that on the day of his arrival at the defendants' stable, when there was a crowd of spectators about him, one Martin, who testified that he was a coal hoister and engineer, and did not claim to be a horseman, went into the stall carrying a pail, and the horse kicked, hitting at the same time the man and the pail. Except at that time, he never was known to kick at anybody before the time of the plaintiff's injury. According to the evidence, this kicking of Martin was a matter of common knowledge about the stable, and the plaintiff testified that if a man was kicked in the stable, it was common talk, and he would be likely to know it. Upon the undisputed testimony of the plaintiff himself, the defendants had no reason to suppose that

he was ignorant of this incident of kicking in the stable where the plaintiff was employed, which was seen by many persons. Unless they had reason to suppose that he was ignorant of it, and needed warning of danger from this particular horse as distinguished from other strange horses, they cannot be charged with negligence. We see no evidence that they believed or had reason to believe that the plaintiff was ignorant of what had happened.

If the plaintiff, as he testifies, did not know of this single instance of kicking, it does not appear that his conduct at the time of the injury was affected by this ignorance. Previously to that he had used and taken care of the horse for a long time, and had formed his judgment in regard to him from observation and experience. It is not to be supposed that his management of the horse at the time of the accident would have been affected by information that, many weeks before, when the horse had just been brought in from a long car trip, and was perhaps excited by a crowd of spectators around him, he kicked a stranger, not a horseman, who entered his stall with a pail. Much less did the defendants have reason to believe that a man of the plaintiff's experience, who seemingly knew a great deal more about this horse than either of them or any other of their servants, would need to be told of the possibility that he might kick. The case is very similar in its facts to *Eastman* v. *Scott*, 182 Mass. 192, in which it was held that knowledge by the owner of a horse, that he previously had kicked a man in the stable was not enough to charge him with negligence for failing to tell the plaintiff, who was afterwards kicked by him while he was using him in the defendants' service.

The evidence of the conduct of the horse on one occasion, when he got loose in the large stable, had no tendency to show that he was different from other horses, or that there was special danger in taking care of him or using him.

There was testimony that a veterinary surgeon was asked by the owner "if he knew any reason why the horse should be poor, and not take fat and look a little better," and that, after looking him over, he inquired if he was a nervous horse and was answered in the negative, after which he said, "I should call him a nervous, vicious horse." He was asked further whether

the horse had a special ailment, and gave his opinion that he had not. There is nothing in this testimony that has any tendency to show that the horse was likely to kick, or that it was the duty of the defendants to tell the plaintiff that he was dangerous. The surgeon was examining the horse in reference to his health. He did not profess to be able to tell even whether he was nervous or not, but asked the owner about it for information. A jury would not be warranted in finding that this remark, made apparently only a short time before the plaintiff's injury, imposed upon the defendants the duty of warning a man like the plaintiff that the horse which he was using had a propensity for kicking.

We are of opinion that the ruling of the Superior Court was correct.

*Exceptions overruled.*