**John Donahue, Defendant in Error, v. Frank E. Scott Transfer Company, Plaintiff in Error.**

**Gen. No. 13,854.**

1. ANIMALS—*what essential to recover for injuries inflicted by alleged vicious.* Before a plaintiff can recover for injuries inflicted by an alleged vicious animal, it is incumbent upon him to establish

by his proofs that the owner of such animal knew that the animal in question was vicious and had a tendency to bite mankind.

2. ANIMALS—*what precludes recovery for injuries inflicted by alleged vicious.* Injuries inflicted by an alleged vicious animal cannot be made the basis of a recovery where it appears that the plaintiff had wantonly irritated and aggravated such animal and that such irritation and aggravation was calculated to have brought about the act which resulted in the injuries.

3. VERDICT—*when set aside as against the evidence.* A verdict which rests upon the testimony of a single witness will not be sustained on review where the testimony of such witness is flatly contradicted by several other equally credible witnesses and by the facts and circumstances appearing at the trial.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed May 18, 1908. Rehearing denied June 1, 1908.

LACKNER, BUTZ & MILLER, for plaintiff in error.

E. R. THURMAN and FRANK T. WINSLOW, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff on a trial in the Municipal Court, before a judge and jury, recovered a judgment upon the verdict of the jury for $511.

The bill of particulars, the pleading of plaintiff, claims damages for "personal injuries by being bitten and lacerated and divers bones of his left arm broken by a jackass on September 12, 1906, while plaintiff was working for defendant as stockman in a stable at 402-410 Wabash avenue, Chicago. Plaintiff was ordered by the foreman of Frank E. Scott Transfer Company to give attention to said jackass, which was a vicious and dangerous animal and so known to be to the defendant, and which facts were unknown to the plaintiff. The defendant wholly failed to warn or in any manner to inform plaintiff of the vicious and

dangerous habits of said jackass, and while plaintiff was exercising all due care and caution for his own saftey in discharging his duties, plaintiff was attacked by said jackass and badly bitten, bruised and lacerated, and divers bones of his left arm broken, so that it will remain permanently injured.''

Defendant moved the trial judge, at the close of plaintiff's case, to instruct the jury to find a verdict in its favor, and renewed the motion at the close of all the proofs. These motions were denied, and the action of the court in denying them is assigned as error. It is also contended that the verdict and judgment are manifestly contrary to law and the greater weight of the evidence, and that the court erred in not granting defendant's motion for a new trial.

Before plaintiff can recover it is by law incumbent upon him to establish by his proofs that defendant knew that the jackass was vicious and had a tendency to bite mankind. This is not only the duty cast upon him by the law, but one which he assumes by the averments of his pleading above set forth.

When plaintiff suffered the injuries inflicted by the offending jackass he was performing the duties incident to his employment. He had been taking care of the jackass and fifteen horses for a week preceding the time the animal attacked him. During this work he had become sufficiently acquainted with the habits of the animal to know, as he testified, that the animal was a ''trick jackass.'' If the animal had vicious propensities it would seem but natural that in feeding, watering and caring for him during the week, the viciousness would have made itself manifest. If it did, and he still continued to care for the animal, may it not be said that he assumed the risk of the dangers arising from his continuing to care for the animal? Was not an attack of the animal one of the risks of such employment? We do not think plaintiff can shield himself, after a week's constant contact with this animal, from the assumption of the risk which

the law cast upon him, by the pretense that he did not know that the animal was naturally vicious and would bite mankind.

In Farley v. Pickard, 78 Hun, 560, the case of a dog, it was held that the risk of being bitten was assumed by the plaintiff from the fact of his continuing in the employment with the dog in the barn, and that if the plaintiff did not know the dog was savage and prone to bite mankind, no more knowledge of the dog's nature and propensities was attributable to the master than to the servant, for by analogy of reasoning a servant coming in contact with an animal daily has a better opportunity of learning the nature of an animal left to his care and keeping than does the master, who, it is plain, had not the advantage of the daily and intimate contact which the servant had. As said in the Farley case, *supra,* "If he—plaintiff—had no knowledge which imposed a risk upon him, then neither did the defendant have knowledge which imposed a liability upon him." We regard this reasoning as equally applicable to the relation of the parties in the case at bar. Cooper v. Cashman, 190 Mass. 75.

But plaintiff says that he did not know that the animal was vicious. Still, if he was vicious, such fact is not proven to have been brought to the knowledge of defendant by any evidence saving the remark of Benson, the foreman, to plaintiff immediately after the happening of the accident—"Yes, I know, the son of a bitch he bit me." How this can shed any light upon the fact of knowledge imputable to defendant that the jackass was vicious and had a tendency to bite mankind, we do not perceive. The remark of Benson certainly did not change the jackass from what he was to a dog; so that Benson's remark simply amounted to a statement that the jackass bit him. But under what conditions? Was the beast aggravated by Benson, teased or tormented, beaten or maltreated? From one instance of biting, without explanation of the cause which led up to the act, can it be said that the animal

had a tendency to bite mankind, knowledge of which is imputable to defendant from such solitary unexplained incident? We are not prepared to go to the extremity of so holding.

The injury to plaintiff was suffered about the hour of seven o'clock in the morning, as he was leaving the jackass after having watered him. The jackass took plaintiff by the wrist with his teeth and pinioned him against the stall and broke the bones of his left arm and lacerated it. The jackass kept plaintiff so pinioned for five minutes and until assistance came to relieve him from his unpleasant and painful predicament. Nothing occurred between plaintiff and the jackass that morning to provoke the assault, so far as plaintiff's testimony discloses. Of all the times plaintiff had attended on the jackass, nothing of the kind had happened before, according to his testimony, and but for the testimony of Benson and other of defendant's witnesses the action of the jackass would be inexplicable. But Benson swears that when he put plaintiff to work he cautioned him not to tease or annoy the jackass, because if provoked he might bite him. Benson further testifies that he several times heard that plaintiff had teased the jackass, and that on every such occasion he warned him of his danger; that on the day preceding the accident he warned him. The witnesses Sherrill and Finchley corroborated Benson, testifying that they heard Benson warn plaintiff not to tease the jackass on the occasions Benson swears he warned plaintiff. Sherrill and Finchley also positively testify that it was the daily habit of plaintiff to tease the jackass, and that when teased and annoyed they have seen the jackass snap at plaintiff and try to bite him. It was generally known around the barn that the jackass would bite if teased and provoked. Plaintiff's method of maltreating the animal was by running a rake over him, prodding him with a pitchfork and hitting him with a strap. There is a good deal of human nature in the jackass, and, while docile

enough when kindly treated, the human attribute of resentment and brute retaliation are apt to be aroused when smarting under ill treatment and abuse. These latent instincts of the brute nature are developed by abuse and made manifest under provocation; and they are not confined to the brute creation. The jackass had for days suffered indignities and cruel treatment at the hands of plaintiff, and his attempts to retaliate by snapping and biting at plaintiff had failed. The jackass undoubtedly brooded under the insults of his tormentor and yearned for revenge. He watched his opportunity, and when the tormentor was off his guard and little dreaming of the retribution in store for him, the brute seized him and wounded him as before detailed. In this state of the case we can but voice the rule laid down in Keightlinger v. Egan, 55 Ill. 235, that "if the plaintiff wantonly irritated and aggravated the dog and the dog bit him in repelling the aggression plaintiff should not be allowed to recover for damages caused by his own wrong."

Whatever may have been the effect upon the jury of the admission of the evidence that Benson stated, after the accident, that the jackass bit him—which statement Benson denies having made—we doubt the correctness of the admission of such a statement made subsequent to the accident. C. & N. W. Ry. v. Fillmore, 57 Ill. 265; M. C. R. R. v. Gougar, 55 *ibid.* 503; Same v. Carrow, 73 *ibid.* 348; McCarthy v. Muir, 50 Ill. App. 510. Still, whether admissible or not, the finding of the jury and the judgment of the court are manifestly against the probative force of the evidence. In this condition of the proof the motion of defendant for a new trial should have been granted. Plaintiff's main case was unsupported save by his own testimony. He had no corroborative proof, nor were there circumstances in evidence, undenied, to lend corroborative force to any material portion of his proof. On the contrary every circumstance material to plaintiff's right of recovery was met by positive denial by defendant's witnesses,

and a complete defense is substantiated by defendant's proofs, which is met with the denial of plaintiff only. A judgment thus resting for its support cannot be maintained. Peaslee v. Glass Co., 61 Ill. 94; Johnson v. Sochurek, 104 Ill. App. 350.

Every material matter of proof of plaintiff rests in his testimony, and it is met with contradiction by the defendant's witnesses Benson, Sherrill and Finchley. The credibility of these witnesses being unchallenged, it is clear that the proof greatly preponderates in favor of defendant's contentions, and that plaintiff has not only failed to make out his case by a preponderance of the evidence, but that the defendant's defense is sustained by an overwhelming preponderance of the proof.

The judgment of the Municipal Court is reversed and the cause remanded for a new trial consistent with the views here expressed.

*Reversed and remanded.*