ARTIFICIAL ICE & COLD STORAGE COMPANY *v.* MARTIN, ADMINISTRATRIX.

[No. 15,074. Filed November 26, 1935. Rehearing denied February 20, 1936. Transfer denied April 8, 1936.]

*Fesler, Elam, Young & Fauvre,* for appellant.

*Carey & Cox* and *Raymond Demaree,* for appellee.

WOOD, J.—This is an appeal from a judgment awarding damages to appellee, for the death of her husband Benjamin Earl Martin, as the result of bodily injuries inflicted upon him by a vicious mare, which it was alleged the appellant negligently hired to him for use in the sale and delivery of ice.

The only error assigned for reversal is the overruling of appellant's motion for a new trial. The causes for a new trial, briefly summarized, were: the verdict of the jury was not sustained by sufficient evidence, and was contrary to law; excessive damages; error in the

giving and refusal to give certain instructions, and error in the exclusion of certain evidence.

The complaint alleged among other facts the following:

"That on or about the 11th day of August, 1931, while said decedent was using one of said defendant's said teams and wagons as aforesaid, said defendant ordered and requested said decedent to exchange a mule which he had been working to one of said wagons for a certain horse which another one of said defendant's said delivery men had been working, and said defendant ordered and requested said decedent to use and work said horse in the place of said mule, and thereupon, in pursuance of said request, said exchange was made and decedent began using and working said horse in place of said mule in delivering said ice.

"That said horse was a vicious and dangerous animal and was accustomed and in the habit of kicking and biting and was dangerous to work and handle, all of which said defendant then and there well knew when it ordered and requested said exchange and ordered and requested said decedent to use and work said horse in the place of said mule, but notwithstanding said vicious, and dangerous disposition and nature of said horse and defendant's knowledge thereof, said defendant carelessly and negligently ordered and requested said decedent to use and work said horse and carelessly and negligently failed and neglected to give said decedent any notice or warning of said vicious and dangerous disposition and nature of said horse and of his inclination to kick, all of which said defendant knew or could and should have known at the time it ordered and requested said decedent to work and use said horse in hauling and delivering said ice.

"That on or about the 11th day of August, 1931, while said decedent was working and using said horse in said business of delivering as aforesaid, and without any fault upon his part, said horse, on account of its vicious and dangerous disposition and nature as aforesaid, kicked said decedent."

It is agreed between the parties, that the relation existing between appellant and appellee's decedent was that of bailor and bailee.

The complaint sounds in tort, and is predicated upon the alleged negligent conduct of the appellant in knowingly hiring a vicious and ugly mare to decedent without warning him of such characteristics.

The rules which govern the liability of owners of domestic animals, for personal injuries is clearly and succinctly stated by the New York Court of Appeals in the case of *Hosmer* v. *Carney et al.* (1920), 228 N. Y. 73, 75, 126 N. E. 650, in the following language:

"He is not responsible for such injury unless the vicious propensities of the animal are known to him, or by the exercise of reasonable care the same could have been ascertained. (*Benoit* v. *Troy & Lansingburgh R. R. Co.*, 154 N. Y. 223; *Copeland* v. *Draper*, 157 Mass. 558.) If such animal be delivered by ·him to another, he must inform such person of the animal's vicious characteristics, so far as known, or ascertainable by the exercise of reasonable care. *McGovern* v. *Fitzpatrick*, 148 App. Div.. 34. If such information be given, or the person to whom the animal is delivered knows, or before injury ascertains, the vicious character of the animal, the owner is not liable. *Douglas* v. *Scandia Coal Co.*, 161 Iowa 180; *Sidwell* v. *Economy Coal Co.*, 154 Iowa 475; *Cooper* v. *Cashman*, 190 Mass. 75. The liability of the owner is predicated upon his omission of duty in not imparting the information, but such omission does not render him liable if the negligence of the injured party contributed to the injury. Judge Cooley, in his work on Torts (3d ed.) at page 701, says, 'The doctrine of contributory negligence applies to the case of injury by animals,' and the same is asserted in section 639 of Shearman and Redfield on Negligence (6th ed.), also in Labatt's Master and Servant (2nd ed.), §1143, and has been recognized as a rule of law applicable to cases brought to recover for such injuries. *Loomis* v. *Terry*, 17 Wend. 496; *Williams* v. *Moray*, 74 Ind. 25; *Woolf* v.

*Chalker,* 31 Conn. 121; *Bessemer Land Co.* v. *Dubose,* 125 Ala. 442. Obviously, there can be no negligence on the part of the owner in not instructing a person as to that which he already knows; and if, before injury, such person ascertain all the information which could have been imparted to him, he is thereafter charged with knowledge thereof. He cannot complain of dangerous conditions of which he has become as fully informed as the owner. This seems too plain to require the citation of authorities, but see *Douglas* v. *Scandia Coal Co., supra,* and authorities there cited."

"In reviewing the evidence in cases on appeal our province is limited to the settled rule that 'where evidentiary facts are undisputed and are of such a nature as to permit but one inference as to the ultimate fact to be drawn therefrom, the Appellate Court may draw that inference; but where the facts are such that men of equal fairness and intelligence may draw different conclusions, the finding of the trial court will not be disturbed on appeal.' 'Whether the verdict is sustained by the evidence is determined by applying the law to the facts it proves, since it is obvious that, if the evidence does not bring the case within the governing legal principle, the verdict is without support.' " *Keltner* v. *Patton* (1933), 204 Ind. 550, 555, 185 N. E. 270; and authorities cited. Keeping these rules in mind, let us examine the allegations of the complaint and the evidence submitted in support thereof.

The complaint alleged that the mare was hired to appellant's decedent on August 11, 1931. The undisputed evidence was, that in April, 1931, the appellant hired a team of mules to the decedent, and at the time the mare was delivered to decedent's barn. Whether the mare was hired to decedent or to his nephew Vernon Ratcliff is not clear from the evidence, but the evidence is undisputed, that from the time the mare was delivered at decedent's barn, the team of mules and the mare were stabled and cared for

in the barn, which was under the control of and located upon premises where appellee and decedent lived, and the evidence is further undisputed, that during the entire time from April until August, when the exchange alleged in the complaint was made, Ratcliff had the exclusive use, control and care of the mare and paid appellant for her use. The evidence is further undisputed, that the appellant had owned the mare for some months previous to April, when she was sent to decedent's barn; that during that entire time, she never manifested any vicious propensities, but was quiet and gentle, and that previous to and at the time of her hiring in April, appellant had no knowledge that the mare was vicious. There was undisputed evidence that while Ratcliff was using the mare she manifested vicious and ugly traits, in that on several occasions she kicked and balked, and on one occasion it was thought that she kicked some siding off the barn. Whether appellant was informed of these manifestations of viciousness previous to the exchange in August is a question on which the evidence is conflicting. The evidence is undisputed that the decedent watered the mare occasionally, when Ratcliff was not present to do so, and that she kicked at decedent previous to the exchange in August. Ratcliff testified that he told decedent that he, Ratcliff, thought that the mare kicked the side of the barn out on one occasion and that decedent did not like it; that he told decedent he, Ratcliff, did not like the way the mare worked and pulled, and that decedent knew that she would balk and kick a little bit when on the wagon. No one disputed this testimony. It thus appears that the decedent had notice of the vicious character of the mare before the exchange was made. This would relieve the appellant from the duty of imparting such knowledge to the decedent, assuming that it possessed same. *Douglas* v. *Scandia Coal Co., supra.*

The complaint alleged: ". . . but notwithstanding said vicious and dangerous disposition and nature of said horse and defendant's knowledge thereof, said defendant carelessly and negligently ordered and requested said decedent to use and work said horse." The word "ordered" as used in the complaint is defined as meaning, "To give an order to; to command," and is synonymous with the word "command." Webster's Dictionary, Ed. 1931. It necessarily excludes the idea of the exercise of any judgment or opinion on the part of the person to whom the order is given. The word "requested" as used in the complaint is defined as meaning, "To ask for (something) or for (permission or opportunity to do, see, hear, etc., something) ; to solicit." It is synonymous with beg, solicit, entreat, beseech. Webster's Dictionary, Ed. 1931. The only evidence in the record tending in any way to support this allegation of the complaint is as follows; we quote the record; Vernon Ratcliff testifying: "Question. What do you know, if anything, about trading a mule for your horse? Answer. This bay mare was getting kind of skinny, we thought if we put her in the team with the mule she would pick up. Question. Who thought that? Answer. Me, and Ben and Mr. Goll. Question. What did he have to do with it? Answer. We told him about her and he asked why we didn't do it. Question. He asked you why you didn't change around? Answer. Yes. Question. And on that suggestion you did change around? Answer. Yes." Mr. Goll was an officer of appellant.

The word "suggestion" as used here means "A suggesting; presentation of an idea especially indirectly, as through association of ideas, a bringing before the mind for consideration, action, solution or the like." Webster's Dictionary, Ed. 1931. Giving the appellee the benefit of the most favorable interpretation of which this evidence is susceptible it falls far short of estab-

lishing that the appellant either ordered or requested the decedent to exchange one of his mules for the mare. Even though Mr. Goll may have suggested the exchange it amounted to neither an order nor a request that it be made, but was only a suggestion given to decedent and Ratcliff, for their consideration, as a means of solving the problem which apparently confronted them, on which they were at liberty so far as appellant was concerned, to act or not as they saw fit.

The complaint further alleged that, "while said decedent was working and using said horse in said business of delivering as aforesaid, etc." The evidence is undisputed that the decedent never worked the mare at all, from the day the exchange was made to and including the day on which she kicked him; that it was not while she was being worked in the team in the delivery of ice that she kicked decedent, but at that time the mare was standing in the barn lot, a boy was sitting astride her and about to ride her to a watering place when decedent stepped up behind the mare and slapped her upon the right rump, whereupon she kicked decedent in the abdomen, inflicting injuries causing his death. Under such circumstances we are unable to see where there was any causal connection between the exchange of the mare for the mule, and the accident of which complaint is made.

Giving effect to the rules of law heretofore announced as we are required to do, we conclude that the verdict of the jury was not sustained by sufficient evidence and that it was contrary to law.

Other errors are complained of, but the conclusion which we have reached makes it unnecessary to consider them, inasmuch as they probably will not recur upon another trial of this cause.

Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial, and

for further proceedings not inconsistent with this opinion.