OPINION OF THE COURT
Meyer, J.
The system of comparative causation established by CPLR article 14-A encompasses both the strict liability of an owner of a domestic animal to a person injured as a result of the animal’s vicious propensity and the assumption of risk implied from the injured person’s use of or contact with the animal with actual or constructive notice of such propensity. It does not, however, cover the express assumption of risk by the injured party. Plaintiff, a participant in a donkey basketball game, would have been entitled to a jury instruction on comparative causation based on implied assumption of risk as she requested had she not testified that she was informed by defendant’s employee prior to her participation that she participated at her own risk. In view of that testimony, however, her participation in the games constituted an express agreement on her part to assume the risk, entitling defendant to the direction of a verdict in its favor. The order of the Appellate Division, affirming the judgment for defendant entered on the jury’s special verdict, should, therefore, be affirmed, with costs.
I
Plaintiff, a student teacher at the South New Berlin Central School, was injured during a donkey basketball game when the donkey she was riding put its head down and she fell off. The game, sponsored as a fund-raising event for the senior class, was *163 staged under contract by the defendant Buckeye Donkey Ball Company, which provided the donkeys, helmets for each of the players, and an employee who transported and handled the animals, gave instructions to the participants, and acted as referee of the games, in return for which the company received a percentage of the receipts. Two games were played; the first pitted the faculty team against the fire department team and was won by the faculty team; the faculty team then opposed the senior class team in the second game. Plaintiff participated in the first game without mishap, but had a different, larger donkey for the second game than she had had for the first. She spent a good deal of the game walking the donkey around but, at the urging of another faculty member, mounted. Soon thereafter she was thrown over the donkey’s head when it put its head down as it stopped, with resultant permanent injury to her left arm.
Plaintiff sued both the Board of Education and defendant Buckeye, but settled her claim against the Board of Education prior to trial. The claimed negligence on the part of Buckeye as particularized was that knowing of the vicious propensities of the donkey, defendant allowed plaintiff to ride without sufficient warning of such propensities, failed to provide adequate supervision and failed to provide adequate safety equipment. Buckeye, in addition to denying negligence on its part, pleaded as separate affirmative defenses assumption of the risk and reduction of damages by reason of plaintiff’s culpable conduct. There was evidence that the instructions given by Buckeye’s employee to the participants included the statements that the donkeys do buck and put their heads down causing people to fall off and that if injuries happened the participants were at their own risk.
At the close of the evidence defendant moved to dismiss on the grounds that no vicious propensity had been shown and that by plaintiff’s own admission she had assumed the risk, and plaintiff moved for a directed verdict and also for a comparative negligence charge from New York Pattern Jury Instructions — Civil.[1] All of those requests were denied, the Trial Judge ruling *164 that plaintiff’s conduct was to be measured not in diminution of damages, but “solely for the purpose of determining whether all of the elements of her cause of action exist, one of the elements being that she did not knowingly expose herself to the danger of injury by the animals.” The case was submitted to the jury under instructions that if they found that the donkey assigned to plaintiff had tendencies likely to cause the type of accident which occurred, that defendant Buckeye was aware of those tendencies, and that plaintiff was not made aware of those tendencies either by defendant or by her own observation before the accident occurred she could recover, but that if she was made aware of them by defendant or by observation before the accident she could not recover. In answer to specific questions presented to the jury, they found that the donkey had such tendencies, that defendant was aware of them and that plaintiff was informed by defendant’s employee, or in the exercise of reasonable care should have been aware of, the propensity of the donkey she was thrown from. On plaintiff’s appeal from the judgment for defendant entered on that special verdict, the Appellate Division affirmed, without opinion.
The matter is before us by our leave (62 NY2d 602). We conclude that the comparative causation principle enacted by CPLR 1411 applies to a strict liability action involving the vicious propensities of a domesticated animal, and to the implied assumption of risk by a person injured by such an animal, but not to the express assumption of risk by such a person. Although implied assumption of risk, therefore, was under these circumstances a defense in mitigation of damages to be pleaded and proved by defendant rather than an element of plaintiff’s cause of action, defendant was entitled to dismissal of the complaint at the end of the plaintiff’s case by reason of her admission that she had been informed both of the risk of injury and that “the participants were at their own risk.” We, therefore, affirm.
II
The rule governing one who keeps an animal with knowledge of its vicious propensities is one of strict liability or, as it is sometimes called, absolute liability, rather than negligence (Molloy v Starin, 191 NY 21, 25; Muller v McKesson, 73 NY 195, 200; Lynch v McNally, 73 NY 347, 349; see, Strunk v Zoltanski, 62 NY2d 572; People v Sandgren, 302 NY 331, 339; cf. Hosmer v Carney, 228 NY 73, 75-76). It is, however, important to note that prior to enactment of CPLR article 14-A, contributory negligence was not a defense to such liability (Molloy v Starin, supra) but assumption of the risk was (see, Stevens v Hulse, 263 NY *165 421), and that the rule applies not only to a wild animal but also to a domestic animal which is vicious or has a dangerous tendency of which its owner knows or has reason to know (Restatement [Second] of Torts § 509; 1 NY PJI2d 506-508).
This is not a situation like Akins v Glens Falls City School Dist. (53 NY2d 325) in which prior to adoption of CPLR 1411 there had been no determination of the scope of the duty involved because all participants were held to have assumed the risk, and in which the issue raised was scope of duty. Here the Trial Judge charged that if the donkey assigned to plaintiff had tendencies or propensities likely to cause injury to plaintiff, the defendant was aware of those tendencies and did not tell plaintiff about them or plaintiff was otherwise unaware of them, and those tendencies were a proximate cause of plaintiff’s injuries, she was entitled to recover, but that if plaintiff was made aware of those tendencies either by defendant or by her own observation, she could not recover. There having been no objection to that charge by defendant, the issue on this appeal is not the nature of defendant’s liability but whether plaintiff must be held not to have been entitled to the comparative negligence charge her attorney requested because she had expressly assumed the risk.
Ill
A
Until the enactment in 1975 of CPLR article 14-A, it was, except in an action for wrongful death, a substantive part of the plaintiff’s right to recover in a negligence action that plaintiff prove himself or herself free from negligence contributing in the slightest degree to the occurrence (compare, Fitzpatrick v International Ry. Co., 252 NY 127, 133-134, with Flynn v Long Is. R.R. Co., 289 NY 283; and EPTL 5-4.2). The theory was that plaintiff’s negligence was an intervening cause, which broke the causal connection between the defendant’s negligent act and plaintiff’s injury (Dowd v New York Ontario & W. Ry. Co., 170 NY 459, 469-470).
Assumption of the risk, on the other hand, was predicated not upon plaintiff’s intervening act, but upon his or her agreement, express or implied, not to hold defendant responsible for the injury-causing act, negligent though it may have been, which resulted from plaintiff’s entering into the activity with knowledge of its danger, or under circumstances from which it could be found that he or she should have had such knowledge (id.; Restatement [Second] of Torts §§ 496A-496F). The burden of *166 proving such a contract rested upon defendant, not plaintiff (Dowd v New York Ontario & W. Ry. Co., supra; Buckley v Cunard S.S. Co., 233 App Div 361; Restatement [Second] of Torts § 496G).
Confusion in assessing where the burden lay in a particular situation arose from the imprecise language of the cases and the narrowness of distinction between the two doctrines in some situations (McFarlane v City of Niagara Falls, 247 NY 340, 349; Dowd v New York Ontario & W. Ry. Co., supra, at p 471). The confusion was compounded, moreover, by cases which, on the one hand, suggested that where plaintiff assumes the risk there is no breach of duty on defendant’s part and thus no negligence (McEvoy v City of New York, 292 NY 654, affg 266 App Div 445, 447) and, on the other, used assumption of risk language in reference to situations in which the law imposed no duty on the defendant with respect to a person in plaintiff’s status.[2]
B
It is against this background that CPLR article 14-A was enacted in 1975, providing that as to all causes of action accruing on or after September 1, 1975, “the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages” (CPLR 1411), and “shall be an affirmative defense to be pleaded and proved by the party asserting the defense” (CPLR 1412). The proposed article was presented to the Legislature with a Memorandum of the Judicial Conference (1975 NY Legis Ann, at 23) and explained in the Report of the Judicial Conference to the Legislature on the CPLR (Twenty-first Ann Report of NY Judicial Conference, 1976, at 235 ff) and in a Memorandum of the Sponsoring Assemblyman urging its adoption (NYLJ, Apr. 23, 1975, p 7, cols 1-3). Those memoranda made clear that “this article is applicable not only to negligence *167 actions, but to all actions brought to recover damages for personal injury, injury to property or wrongful death whatever the legal theory upon which the suit is based” (emphasis supplied; 1976 Judicial Conference Report, at 240; see also, 1975 NY Legis Ann, at 24; NYLJ, Apr. 23,1975, p 7, at col 2). They took note of cases such as McEvoy v City of New York (supra), which had taken the position that assumption of the risk negated any duty owed by defendant to the plaintiff, remarking that, “Such an analysis would bar plaintiff’s recovery as a matter of law, thereby undermining the purpose of this article — to permit partial recovery in cases in which the conduct of each party is culpable” (1976 Judicial Conference Report, at 241; see also, 1975 NY Legis Ann, at 24; NYLJ, Apr. 23, 1975, p 7, at col 3).
With respect to “culpable conduct” the Report of the Judicial Conference stated that the phrase was “used instead of ‘negligent conduct’ because this article will apply to cases where the conduct of one or more of the parties will be found to be not negligent, but will nonetheless be a factor in determining the amount of damages”, and that “[t]his article permits the apportionment of damages in cases *** in which the plaintiff’s negligence may be the only negligence, but the defendant’s conduct is nonetheless ‘culpable’ and therefore to be considered in determining damages” (1976 Judicial Conference Report, at 240; emphasis in original). Culpable conduct, it noted, included not only assumption of the risk and contributory negligence, but also product misuse and the patent danger rule declared in Campo v Scofield (301 NY 468) and applied in strict liability cases (Bolm v Triumph Corp., 33 NY2d 151).[3] It made clear also that the examples given were not exhaustive and would not preclude “[j]udicial development of the concept of ‘culpable conduct’ consistent with the goals of this article” (1976 Judicial Conference Report, at 242). Finally, as to the culpable conduct of the defendant, the Report stated that, “The defendant’s culpable conduct may include, but is not necessarily limited to, negligence, breach of warranty, a violation of statute giving rise to civil liability, conduct giving rise to liability upon a theory of strict liability, and intentional misconduct” (id., at 242).
Because the Legislature contemplated that article 14-A would “apply to cases where the conduct of one or more of the parties will be found not negligent” and “in which the plaintiff’s negli *168 gence may be the only negligence,” but also that defendant’s culpable conduct would include “conduct giving rise to liability upon a theory of strict liability,” it is clear that both the basis of liability asserted against the present defendant and the plaintiff’s acts may constitute “culpable conduct” within the meaning of the statute.
C
Thus, what the statute requires comparison of is not negligence but conduct which, for whatever reason, the law deems blameworthy, in order to fix the relationship of each party’s conduct to the injury sustained and the damages to be paid by the one and received by the other as recompense for that injury. Comparative causation is, therefore, the more accurate description of the process,[4] as is evident both from the wording of CPLR 1411 (“shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages” [emphasis supplied]) and from the section of the Judicial Conference Report entitled “Causal Culpability” (1976 Judicial Conference Report, supra, at p 242): “Only culpable conduct which was a substantial factor in causing the harm for which recovery is sought is to be considered in determining the amount by which damages are to be diminished. For example, if P accepts a ride in an automobile driven by A, with knowledge that A is intoxicated, and P is injured when B negligently drives his vehicle into the rear of A’s vehicle which is properly stopped for a red traffic signal, in P’s action against B, there will be no diminution of damages. While P may have engaged in culpable conduct in accepting a ride with A, that conduct was not a substantial factor in causing the damage suffered by P.”[5] As that example makes clear, for the statute to operate, plaintiff’s conduct must be a cause in fact of *169 his or her injury. When it is, the statute “requires that the culpable conduct attributable to the decedent or claimant be compared with the total culpable conduct which caused the damages” (id., at 242).
D
Neither article 14-A nor its legislative history defines “assumption of risk.” The common law distinguished between express and implied assumption of risk. Express assumption., which was held to preclude any recovery, resulted from agreement in advance that defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent (Prosser, Law of Torts, at 442 [4th ed]; Schwartz, Comparative Negligence § 9.2; Comparative Negligence Law & Practice § 4.20 [1] [b] [i] [Matthew Bender]; Restatement [Second] of Torts § 496B; Uniform Comparative Fault Act § 1 [b], 12 ULA [1985 Cum Ann Pocket Part], at 41; Ann., 16 ALR4th 700). Implied assumption was founded not on express contract, but on plaintiff’s voluntarily encountering the risk of harm from defendant’s conduct with full understanding of the possible harm to himself or herself (Prosser, op. cit., at 445; Schwartz, op. cit. §§ 9.1, 9.3; Comparative Negligence Law & Practice op. cit. § 4.20 [1] [b] [ii]; Restatement [Second] of Torts §§ 496C, 496D, 496E), and according to some authorities required that plaintiff’s consent to the risk involved be unreasonable under the circumstances (Schwartz, op. cit. § 9.1, at 157; Comparative Negligence Law & Practice, op. cit., at 4-33 — 4-34; Uniform Comparative Fault Act § 1 [b] and comment; Restatement [Second] of Torts § 496E comment d).
The Legislature is, however, presumed to be aware of the decisional and statute law in existence at the time of an enactment (Hammelburger v Foursome Inn Corp., 54 NY2d 580, 588; Easley v New York State Thruway Auth., 1 NY2d 374, 379), and to have abrogated the common law only to the extent that the clear import of the language used in the statute requires (Transit Commn. v Long Is. R.R. Co., 253 NY 345, 355).
Here, as noted by Schwartz (op. cit. § 9.2,1981 Cum Supp, at 74), CPLR 1411 leaves it “unclear whether express assumption of risk is subject to comparison.” But, when article 14-A was enacted, it had long been the law that a contractual limitation of liability for negligence or other fault of a party seeking to be relieved of his ordinary responsibility did not violate public policy (Van Dyke Prods. v Eastman Kodak Co., 12 NY2d 301; *170 Ciofalo v Vic Tanney Gyms, 10 NY2d 294; Kirshenbaum v General Outdoor Adv. Co., 258 NY 489; accord, Florence v Merchants Cent. Alarm Co., 51 NY2d 793; I.C.C. Metals v Municipal Warehouse Co., 50 NY2d 657), except as specific statutes imposed limitations upon such agreements (see, Goncalves v Regent Intl. Hotels, 58 NY2d 206; Weinberg v D-M Rest. Corp., 53 NY2d 499) or interdicted them entirely (see, General Obligations Law, §§ 5-321, 5-322, 5-322.1, 5-323, 5-324, 5-325, 5-326 [all of which were enacted well prior to 1975 except § 5-322.1, which was enacted at the same legislative session as was CPLR art 14-A]). We conclude, therefore, that CPLR 1411 requires diminishment of damages in the case of an implied assumption of risk but, except as public policy proscribes an agreement limiting liability, does not foreclose a complete defense that by express consent of the injured party no duty exists and, therefore, no recovery may be had.[6] Added support for that conclusion may be found in the decisions of courts of other States.[7]
*171 The existence of such an express assumption of risk by the injured party is a matter of defense upon which the burden of proof will be on the party claiming to have thus been absolved of duty (CPLR 3018 [b]; Dowd v New York Ontario & W. Ry. Co., 170 NY 459, supra) and will be a factual issue for the jury, unless there is no real controversy as to the facts (Goncalves v Regent Intl. Hotels, 58 NY2d, at p 218, supra; McEvoy v City of New York, supra).
IV
Here there is evidence from which the jury could have concluded that plaintiff had knowledge of the risk and by participating in the games voluntarily assumed it, and no question that plaintiff’s conduct in mounting the donkey from which she was thrown was a cause in fact of her injuries. She would, therefore, have been entitled to a comparative causation charge on implied assumption of the risk had she not conceded that she was told before the games began that “participants are at their own risk.” In light of that concession, however, the Trial Judge should have directed a verdict for defendant.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Alexander concur; Judge Titone taking no part.
. Order affirmed, with costs.

. The comparative negligence charge was requested during the charge conference (see, CPLR 4110-b) just prior to summations, but the request was not repeated at the end of the court’s instructions to the jury, to which plaintiff’s attorney took no exception. Defendant argues that the issue was, therefore, not preserved. There is, however, nothing in this case, as there was in Bichler v Lilly & Co. (55 NY2d 571, 583-584), to suggest that plaintiff’s request was being either abandoned or withdrawn. The charge conference request was, therefore, sufficient to preserve the issue.

. Thus, prior to Basso v Miller (40 NY2d 233), a property owner owed no duty of reasonable care to a trespasser, who was said to have taken upon himself the risk of all but intentional, wanton or willful injury (Carbone v Mackchil Realty Corp., 296 NY 154, 158-159). Likewise, the city, having provided an experienced lifeguard who was in attendance at the time plaintiff’s decedent drowned, was held to have violated no duty, there being no evidence that the lifeguard.could have prevented the accident and a “person who is sui juris and engages in such a sport as swimming accepts the dangers inherent in the sport so far as they are obvious and necessary” (Curcio v City of New York, 275 NY 20, 23-24). For other examples see, 1 NY PJI2d 193-195.

. The Campo case was overruled in Micallef v Miehle Co. (39 NY2d 376, 387), which stated that, “As now enunciated, the patent-danger doctrine should not, in and of itself, prevent a plaintiff from establishing his case.” CPLR 1411 was referred to only incidentally in a footnote, the accident involved having occurred before its effective date.

. “[T]he underlying task in each case is to analyze and compare the causal conduct of each party regardless of its label” (Murray v Fairbanks Morse, 610 F2d 149, 159; accord, Coney v J.L.G. Indus., 97 Ill 2d 104, 454 NE2d 197; see also, Kulig, Comparative Negligence and Strict Products Liability: Where Do We Stand? Where Do We Go?, 29 Vill L Rev 695, 709-711 (and cases cited nn 79-94); Twerski, The Many Faces of Misuse: An Inquiry Into the Emerging Doctrine of Comparative Causation, 29 Mercer L Rev 403; Twerski, The Use and Abuse of Comparative Negligence In Products Liability, 10 Ind L Rev 797; Wade, Products Liability and Plaintiff’s Fault — The Uniform Comparative Fault Act, 29 Mercer L Rev 373; Ann., 9 ALR4th 633; 10 ALR4th 946).

. Similarly, Uniform Comparative Fault Act § 2 (b) (12 ULA [1985 Cum Ann Pocket Part], at 43) provides that: “In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.”

. We do not read the reference in the Judicial Conference Report to the McEvoy case (292 NY 654) as inconsistent with our conclusion. McEvoy concerned assumption arising from prior knowledge of the defect (in truth, contributory negligence) and from a statute imposing upon an owner or occupant of real property, such as plaintiff McEvoy, an obligation to keep the sidewalk free of defect. The court’s construction of the statute was that it imposed merely fiscal responsibility, not a standard of care, on plaintiff, and, therefore, could not constitute contributory fault.

. Only two cases directly in point have been found: Kopischke v First Cont. Corp. (187 Mont 471, 610 P2d 668) held on public policy grounds that the “as is” sale of a used car was not an assumption of the risk of the defective condition of the vehicle under the Montana comparative negligence statute, and Jacobsen Constr. Co. v Structo-Lite Eng. (619 P2d 306, 310 [Utah]) construed the Utah statute, which refers to assumption of risk, to exclude express assumption. Both holdings were dictum. But a number of comparative negligence statutes making no reference to assumption of risk have been held not to include express assumption (Wilson v Gordon, 354 A2d 398 [Me]; Saxton v Rose, 201 Miss 814, 29 So 2d 646; Braswell v Economy Supply Co., 281 So 2d 669 [Miss]; Keegan v Anchor Inns, 606 F2d 35 [VI]; Kennedy v Providence Hockey Club, 119 RI 70,376 A2d 329; see, Springrose v Willmore, 292 Minn 23, 192 NW2d 826; contra, Lyons v Redding Constr. Co., 83 Wn 2d 86,515 P2d 821) and in Rutter v Northeastern Beaver County School Dist. (496 Pa 590, 614-615, n 6,437 A2d 1198,1210, n 6) a statute which specifically excepted assumption of risk as to downhill skiing was held not to affect assumption of risk in any other situation. But where comparative negligence has been adopted judicially rather than by statute, a number of courts have held it not to include express assumption (Li v Yellow Cab Co., 13 Cal 3d 804, 532 P2d 1226; Blackburn v Dorta, 348 So 2d 287 [Fla]; Meistrich v Casino Arena Attractions, 31 NJ 44,155 A2d 90; Scott v Rizzo, 96 NM 682, 634 P2d 1234; Rutter v Northeastern Beaver County School Dist, supra, at pp 612-613, at p 1209; Lyons v Redding Constr. Co., supra; Brittain v Booth, 601 P2d 532 [Wyo]; see, Parker v Redden, 421 SW2d 586 [Ky]; Felgner v Anderson, 375 Mich 23, 133 NW2d 136; Bolduc v *171 Crain, 104 NH 163,181 A2d 641; Farley v MM Cattle Co., 529 SW2d 751 [Tex]; South v AB Chance Co., 96 Wn 2d 439, 635 P2d 728; Gilson v Drees Bros., 19 Wis 2d 252, 120 NW2d 63; contra, Leavitt v Gillaspie, 443 P2d 61 [Alaska]).