## CALCASIEU PAPER CO., INC. v. MEMPHIS PAPER CO.—222 S. W. (2d) 617.

Jackson.   March 23, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

Burch, Minor & McKay, of Memphis, for appellant.

Canale, Glankler, Loch & Little, and Andrew O. Holmes, of Memphis, for appellee.

SWEPSTON, J. The material question in this case is whether or not the parties contracted with one another.

Complainant sued defendant on open account for paper sold and delivered to it in May 1946 amounting to $9395.68.

Defendant admitted by its answer the correctness of the debt, but by cross-bill sought a recovery of complainant for $3943.10 for damages for breach of contracts appearing in the form of twenty-five separate orders for paper which it was alleged complainant had accepted but refused to deliver in full.

The decree was for the defendant on its cross-bill in the sum of $3255.46 so that the net amount of the judgment for complainant was reduced to $6140.22.

This appeal is by complainant from the action of the Chancellor on the cross-bill.

There are two assignments of error as follows:

"I. The trial court erred in overruling the demurrer filed by appellant. This was error because:

"(a) The cross-bill as amended fails to show any contractual obligation on the part of appellant to sell and deliver the merchandise described in the orders sued on and, consequently, fails to show a breach of any contractual obligation to appellee.

"(b) The cross-bill as amended affirmatively shows that the orders tendered by appellee were never accepted by appellant.

"II. The trial court erred in holding that appellant entered into binding contracts with appellee for the sale of the merchandise described in the cross-bill as amended and in awarding damages to appellee for breach of said contracts. This was error because:

"(a) Each of the alleged contracts sued on upon which a recovery was allowed consisted solely of an offer to purchase by appellee and an acknowledgment of the offer by appellant. Each acknowledgment imposed new terms and conditions which were not accepted by appellee.

"(b) Each acknowledgment of each order sued on contains the following provisions:

" ' Because of the Present National Emergency We Do Not Guarantee Prices, Quantity or Delivery. The Price Prevailing at Time of Shipment Will apply. Priorities, Preferences or Other Limitations of Supply Affecting Our Suppliers or Us, and Transportation Delay, Shall Be Deemed Beyond Our Control.'

" ' Shipment subject prior orders. This order is being entered for shipment when our schedule permits, and no specific promise as to delivery can be made at this time.'

"By the express terms of the foregoing provisions appellant never obligated itself to deliver the goods described in appellee's offers to purchase and, therefore, can not be liable in damages for its failure to deliver.

"(c) The orders and acknowledgments of orders sued on do not constitute contracts because lacing entirely in mutuality and because the provisions of the documents construed together are too indefinite and uncertain to be legally enforceable.

"(d) Prior to and at the time of the alleged contracts sued on appellant was distributing its production on a quota basis without regard to orders with the consent and approval of appellee, and appellee at all times received more than its quota.

"(e) At the request of appellee appellant's production during 1946 was shipped against orders received in the year 1945 during the life of the Second War Powers Act, which orders were invalid and unenforceable under the terms of the Second War Powers Act, and if this production had not been diverted to prior invalid orders at the request of appellee and had been applied to the orders sued on, the orders sued on would have been filled."

The suit was tried regularly upon depositions, so that the review is under Code Section 10622 so far as questions of fact are to be determined with a prima facie presumption of correctness of the findings of the Chancellor.

We think assignment I must be overruled for the reason that the demurrer has been waived.

The record shows that the demurrer was argued and overruled on February 10, 1947 and leave granted to rely on same in appellant's answer to the cross-bill. Yet we do not find in the record that the demurrer was called up or disposed of before or at the hearing.

This situation existed in both of the following cases and it was held that the advantage of a demurrer is lost and the same will be treated as waived when not dis-

posed of at or before the hearing of the cause on the merits. Rogers v. Betterton & Co., 93 Tenn. 630, 27 S. W. 1017; Patterson v. Tate, 141 Tenn. 607, 213 S. W. 981; Gibson, Section 315.

Assignment II presents the much mooted question of when and how an order for merchandise becomes a contract and its solution requires a discussion of the facts.

The Memphis Paper Company, defendant and cross-complainant, had been buying paper from complainant for twenty years under a very friendly relationship.

Upon the advent of World War II a shortage of paper arose. The Government requisitioned a percentage of the production of complainant which ultimately reached thirty-five percent. This necessitated that complainant dispose of the rest of its production under a quota system among its customers. Defendant's quota was 29.1 tons per month. From 1942 until the end of the war in 1945 this quota was abided by with each customer. After the war the quota was disregarded to a large extent and defendant was a preferred customer to the extent of almost double for the first five months of 1946.

On account of the foregoing and of labor shortages and other restrictive conditions complainant superimposed on its regular acknowledgment of order forms the following: "Because of the present national emergency we do not guarantee prices, quantity or delivery. The price prevailing at time of shipment will apply. Priorities, preferences or other limitations of supply affecting our supplies or us, and transportation delay, shall be deemed beyond our control." R. 50, 75, 98.

During the war defendant continued sending in its orders by mail and by telephone and took what it could obtain under its quota, as of course it could only do because the Federal directive relieved all sellers of requisi-

tioned type of materials of liability on contracts unperformed because of the directive.

After the War Powers Act, 50 U. S. C. A. Appendix, Section 631 et seq., expired at the end of 1945, complainant shipped to defendant during the first five months of 1946 158 tons of paper on back order of 1945 and possibly 1944, and 463.1 tons on current orders of 1946.

On June 1, 1946, complainant wrote defendant that the controlling capital stock of the corporation had been acquired by others who planned to use the entire production of paper, so that it would not be able to ship any more paper to defendant. At that time defendant had back orders for 172,155 pounds of paper, for the loss of profits on which this cross-bill was brought.

That quantity of paper represents the unshipped balances on 25 separate orders which are in evidence.

Appellant's argument is summed up as follows:

"1.   That the offers of the appellee were never accepted by appellant. In this connection the acknowledgments of appellant were nothing more than acknowledgments and did not purport to be acceptances.

"2.   That if the acknowledgments of appellant are construed as acceptances, they contained new terms and conditions and were, therefore, counter-offers which were never accepted by appellee.

"3.   That assuming that the acknowledgments were counter-offers and were accepted by appellee, the contracts evidenced thereby created no obligation on appellant. by the very terms of the agreements and did not impose any obligation upon appellee to purchase a particular amount at a particular time or for a particular price, and, therefore, lacked mutuality; that the obligations of each were so uncertain and indefinite that they wholly failed to create a legal obligation.

"4. That if ambiguities exist as to the rights of the parties under the proof and their alleged agreements, they have construed their rights in accordance with appellant's contentions and are bound by the construction.

"5. That all of the evidence shows that the parties agreed to and were operating under a quota system whereby appellee was alloted a quota of 29.1 tons of paper per month and at all times received its full quota.

"6. That at the request of appellee, invalid and unenforceable orders tendered during 1945 were filled during the year of 1946 and, if this portion of appellant's production had been allocated to orders tendered during 1946, all of the orders sued on would have been filled."

It is necessary to describe the orders of defendant and to give the other data on the complainant's acknowledgment form in addition to what is heretofore given.

Defendant's typical order is designated a "Purchase Order"; is numbered; describes the material desired; the shipping date and the price are not specified; contains a reference to OPA price regulations.

Complainant's typical reply without the specially added material shows the consignee, the order number of each party, the "Date Sold" specified, the "Mark or Label" and "Rate specified, Terms specified," the items ordered and as to price "O.P.A. ceiling prices at time of shipment to apply"; also, in print "To customer—This is a copy of our Entry of Your Order. Please Compare carefully and advise us promptly of Any Error or discrepancy existing." At the bottom likewise in print—"General Conditions: All agreements are contigent upon strikes, accidents, delays of carriers and other hindrances unavoidable or beyond our control;

it is understood that this order is taken subject to trade customs of the Kraft Association.

In making delivered prices we simply guarantee the cost of stock at your station on rate indicated, but we are in noway responsible for its safe delivery. Changes in cost of carriage invoke change in prices."

Printed in large red type across the middle of the form are the words "Acknowledgment of Order".

Over this was typewritten on each acknowledgment the following: "Shipment subject to prior orders. This order is being entered for shipment when our schedule permits, and no specific promise as to delivery can be made at this time."

Accordingly, it appears by the testimony of both parties that the only change in the acknowledgment form was the superimposed paragraph heretofore quoted.

Now, as to appellant's first proposition that there was no acceptance by it of appellee's orders we shall disregard for the moment the superimposed paragraph and the omission of the actual statement of the price.

■ ■ It is alleged in the cross-bill and appears in evidence without dispute that for many years these parties had done business on these forms of purchase order and acknowledgment. The acknowledgment shows the "date sold" and under "General conditions" it uses the word "agreements". We are unable to see any inconsistency between an acknowledgment of an order and an indicated acceptance of same, as is fairly to be inferred from these words. We recognize the rule that a mere acknowledgment of receipt of an order without more is not an acceptance of same. Likewise, the addition of mere words of business courtesy which do not convey the idea of acceptance do not make a contract. 46 Am. Jur. 238, Sec. 48.

But expressions which are fairly susceptible of being construed as an acceptance will be so construed. Krohn-Fecheimer Co. v. Palmer, Mo. App., 221 S. W. 353, 10 A. L. R. 683, et seq.

In the instant case we are not dealing, however, with one isolated transaction where we are confined to the document itself on which the parties have never acted.

On the contrary, we have a long course of dealing and many like transactions over the years where merchandise has invariably been delivered on this form of document without further communication between the parties.

After the war restrictions ceased, appellant continued to fill back orders of 1944 and 1945 as soon as possible and the correspondence attached to some of the 1946 orders reflects that they were accepted and some of the 1946 orders have been partly filled. For example, Ex. 14, letter of March 21, 1946 from appellant—"We thank you . . . for order . . . We have entered this . . . and will be sure to include part of this order in your first car as requested."

Again, Ex. 3, letter of defendant, January 24, 1946, "Please refer to order . . . dated April 11 . . . . Please cancel . . . on our order number . . .". Again, Ex. 12, letter of complainant, November 6, 1945, "Thank you for your order number . . . We will include this order in your next car as requested". Again, Ex. 23, letter of defendant, April 18, 1946, "We are attaching hereto order . . . . If you are unable to handle, please let us know by return mail."

On the other hand, it nowhere appears that appellant ever rejected an order or stated that it would do otherwise than ship when conditions permitted.

It seems to us, therefore, that even if it could not fairly be determined from inspection of the acknowledg-

ment alone that the same was an express acceptance of the order, the conduct and course of action of the parties shows unequivocally an implied acceptance.

■ ■ Thus becomes applicable to the construction of the facts here appearing, the rule of practical construction, that " 'The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts, but the declarations of the parties may be considered.' 2 Williston on Contracts, par. 623, citing many authorities, including State v. Board of Trust, 129 Tenn. 279, 329, 164 S. W. 1151'', as such rule was applied in Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S. W. 398, 402.

■ As to appellant's second proposition, that the superimposition of the paragraph on the usual form of acknowledgment of the orders was the injection of a new and different condition not contained in the offer or order and was not accepted by appellee, we think that what has been said immediately above applies to this argument also, whatever the new conditions may have been. Yet we are not prepared to concede that it amounted to new conditions.

Everything in the new paragraph was already covered in substance on the acknowledgment form in use between the, parties except the OPA price, and it was specified to be the ceiling price.

■ Nor do we see any merit in appellant's third proposition as to lack of mutuality. We think there can be no doubt, assuming the acceptance of the order as we have held, that appellee was obligated to take whatever quantity the order specified, whenever delivery could be made by appellant, at OPA ceiling prices at the time of delivery.

The rule is well established that when no definite time for performance of a contract is specified, as it was not in this case by either party the law will imply a reasonable time under the circumstances in contemplation by both parties at the time of formation of the contract. Uniform Sales Act, Section 43(2), Code 1932, Section 7236(2); Thompson v. Woodruff, 47 Tenn. 401; Wildberg Box Co. v. Darby, 143 Tenn. 73, 223 S. W. 855; 46 Am. Jur. 341, Sections 164 and 165; Memphis Furniture Mfg. Co. v. Wemyss, 6 Cir., 2 F. (2d) 428, 431.

In the last case just cited the rule is stated and applied thus: "The law, therefore, fixed a reasonable time in which it was to be performed, and what was a reasonable time is a question to be determined in view of all the circumstances which may have been supposed reasonably to have been in contemplation of the parties. Gill Mfg. Co. v. Hurd, C. C., 18 F. 673; Clark, Contracts, 408; Williston on Sales, Section 462. The expression 'due to the uncertainty of manufacturing' did not relate to an uncertainty as to intention to manufacture at all, but to the uncertainty as to the time when, in view of prior orders and existing factory conditions as to labor and material, the goods could be produced. Janes and Miller were more anxious to buy than was plaintiff to sell, and were both told the factory was overloaded with orders. Janes knew, from the tardy fulfillment of his June order, that the time of performance would be delayed and uncertain, but the intent and the obligation to perform were present. Nor is the language 'subject to . . . our ability to ship' susceptible of the meaning that shipping facilities might not be available for want of a common carrier to serve plaintiff."

In Automatic Sprinkler Co. of America v. Sherman, 5 Cir., 294 F. 533, the contract expressly stated that due

to existing conditions no time for performance was promised. This did not destroy the binding effect of the contract on the promisor, hence it was not lacking in mutuality.

It is a necessary corollary of the rule that when a reasonable time under the contemplated circumstances has elapsed, the promisor must perform or be held to have breached the contract.

We have already answered the fourth proposition adversely to appellant.

We find no materiality in the fifth and sixth propositions.

The quota system was appellant's effort to make an equitable adjustment among its customers on account of war restrictions but when the emergency began to subside, the quota was disregarded *pro tanto,* shipments were resumed and back orders were filled faster. Furthermore, the emergency had no bearing on the refusal of the appellant on June 1, 1946, to fill uncompleted orders.

We are, accordingly, of opinion that the evidence does not preponderate against the degree of the Chancellor and that the same was in all respects correct.

We, therefore, affirm and enter judgment here for appellant for $6140.22 with interest from rendition in this court with costs against appellant.

ANDERSON, P. J., and BAPTIST, J., concur.