**LIPMAN v. ARLINGTON SEATING CO.**

No. 10405.

United States Court of Appeals
Seventh Circuit.

Oct. 31, 1951.

Rehearing Denied Nov. 29, 1951.

94

John T. Chadwell, T. A. Groenke, J. Edgar Kelly, Chicago, Ill. (Snyder, Chadwell & Fagerburg, Chicago, Ill., of counsel), for appellant.

C. Oscar Carlson, John H. Smalley, Chicago, Ill. (McKinney & Carlson, Chicago, Ill., of counsel), for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action to recover damages for breach of contract. After a trial to the court judgment was entered in favor of the plaintiff for $16,105.67, from which judgment defendant appeals.

Defendant, whose factory and office are located at Arlington Heights, Illinois, is a manufacturer of school desks and chairs. The bulk of its products is sold to approximately 100 jobbers throughout the United States, although on occasion defendant has sold direct to a non-jobber customer. Plaintiff, operating in northern California under the name Pacific States Sales Corporation, is a jobber of school furniture. In 1945 and 1946 plaintiff applied to defendant, asking for the right to sell its furniture in the area in which he operated, but each request was refused by defendant because of material shortages and production difficulties. However, in April of 1947 at a meeting between plaintiff and Charles F. Close, vice president of defendant, an understanding was reached that plaintiff could act as distributor and sell defendant's products in its sales area in California.

Beginning in May, 1947, and continuing until November 19, 1947, plaintiff sent defendant a number of orders for its school desks and chairs. Defendant acknowledged the receipt of each of such orders by a form acknowledgment. Its name and address were on the top of the form, then the customer's order number, and the statement, "Sold to Pacific States Sales Corp." The shipping instructions were to ship to Pacific States Sales Corp., c/o the name and address of the particular school customer. The defendant's order number followed and a notation that a 1% cash discount would be allowed for payment up through the 10th of the month following shipment. A description of the items ordered followed, with unit price, extension price, the amount of a 20% deduction, and then the net price. The following was stamped on the acknowledgment in red ink: "This is an exact copy of your order as entered on our books. If not correct please notify us at once." Near the bottom appeared: "This Is Not An Invoice. Acknowledgment of order only." The certificate that defendant was complying with the provisions of the Fair Labor Standards Act of 1938 followed.

The trial court concluded that the acknowledgment of the orders hereinbefore described, in the light of a letter written by defendant to plaintiff on January 26, 1948, and a telephone conversation between defendant's vice president and plaintiff on June 1, 1948, constituted a contract for sale and the shipment within a reasonable time of the designated items of school furniture, and that in failing to make shipment on some of the orders it became liable to plaintiff for damages.

The letter of January 26, 1948, contained in part:

"Mr. Lipman, as we have repeatedly told you, we are going to make every attempt to deliver your orders, * * *.

"We are entirely at the mercy of our raw material suppliers, and our steel situation not only has not improved, but has actual-

ly declined which we hope is only a temporary condition.

"We expect to ship another car for you in February and more cars after that as rapidly as we are able. We cannot do the impossible nor can we at any time guarantee delivery. All we can do is go along to the best of our ability which we are doing."

The pertinent part of the telephone conversation of June 1, 1948, was stated by plaintiff as: "I called Mr. Close to ask him when we could expect more shipments and he replied that he expected to make a shipment, a carload shipment, to us by the end of June. I also told Mr. Close * * we would appreciate his efforts to get the shipment made as promptly as possible," and that Mr. Close said, "That he would make every effort to do so."

On November 19, 1947, defendant's vice president wrote a letter to plaintiff advising that defendant had arranged for a representation in northern California on an exclusive basis by another jobber, effective January 1, 1948. In part the letter stated: "If you would like, we would be glad to accept and fill in their regular turn, any orders for school desks which you place with us between now and the first of the year, as in fairness to you, we are offering this opportunity to close up pending business on which you have spent your time and effort."

Between November 19, 1947, and January 1, 1948, plaintiff sent to defendant 21 additional orders which were acknowledged in the same manner defendant had acknowledged those received prior to this period, except that on all but two of the acknowledgments was stamped, "All prices are subject to adjustment to prices in effect at time of shipment." As of November 22, 1947, when defendant's letter of November 19 was received by plaintiff, plaintiff had acknowledged orders for 1951 desks and 299 chairs which it had not delivered. After November 19, 1947, the defendant shipped a total of 938 desks. On the date of the commencement of this suit, orders for 4131 desks and 965 chairs were acknowledged and remained unfilled.

Plaintiff testified that the prices stated in the orders and those prices stated in the acknowledgments were not controlling. In answer to the question, "So that you did not know at the time you sent an order in what price you would be charged for that furniture?" plaintiff answered, "No, I did not."

The court entered findings of fact and conclusions of law. Finding 4, in part, was: "There was no formal or written contract defining business relations between the parties, but it was understood and agreed between them that defendant would sell its school furniture to plaintiff for resale by plaintiff to his school customers in the Northern California territory covered by plaintiff in his selling operations. Such sales by defendant to plaintiff were to be and always were made to plaintiff upon his credit only, at prices determined by defendant. * * * *"

Defendant urges that the trial court erred in holding that it had accepted the orders sent in by the plaintiff, and that a contract thereby existed requiring defendant to deliver chairs and desks to plaintiff within a reasonable time. Defendant insists that it had not accepted plaintiff's orders, but had merely acknowledged their receipt in accordance with its usual business procedure in that period, that is, to enter an order on its books but, due to the shortage of materials, to make no contract until it was able to accept the order and make shipment at such prices as might then be in effect for the products involved.

We consider it a close question whether defendant's acknowledgment of plaintiff's orders constituted an acceptance. Plainly printed on each acknowledgment was, "Acknowledgment of order only." The use of the word, "only," cannot be ignored. Every acknowledgment of the receipt of an order is not in law an acceptance thereof. Calcasieu Paper Co., Inc., v. Memphis Paper Co., 32 Tenn.App. 293, 222 S.W.2d 617, 621. "It is not enough that the words of a reply justify a probable inference of assent." Sec. 58, Restatement of the Law of Contracts (1932). While subsequent conduct of the parties may be considered as to whether each party recog-

nized the existence of a contract, there is little in defendant's letter of January 26, 1948, and the telephone conversation of June 1, 1948, which bolsters the contention of the plaintiff. However, that question need not be decided as we prefer to base our decision on the ground that even though the orders and the acknowledgments in law added up to contracts they lack validity for want of mutuality.

 In Weston Paper Mfg. Co. v. Downing Box Co., 7 Cir., 293 F. 725, where the agreement for future delivery provided the price of the strawboard was to be as fixed by the seller, we held the contract to be void because of its price provision. While plaintiff contends that this rule was abandoned in a later case, Buggs v. Ford Motor Co., 7 Cir., 113 F.2d 618, we consider that an exception to the rule was merely there announced. In the Buggs case the court was considering the validity of a comprehensive exclusive automobile dealership contract which was well established by usage in the automobile industry. In a much later case, Taller & Cooper v. Illuminating Electric Co., 7 Cir., 172 F.2d 625, 626, this court again cited the Weston Paper Mfg. Co. case, supra, and specifically held, " * * * A contract for the future delivery of personal property is void for want of mutuality if the price is conditioned entirely on the will of one of the parties. * * *" No applicable Illinois State court cases to the contrary have been cited, and our research has likewise disclosed none, so we think the decision in the Taller case is controlling here, and that, conceding defendant had accepted plaintiff's orders, the resulting contract is void for want of mutuality.

Plaintiff argues, however, that defendant should not be permitted to rely on the defense of want of mutuality, contending such defense was not raised in the trial court. It is true that this defense was not heavily relied upon in the trial court; however, it nevertheless was specifically brought to the attention of the trial court on the oral argument.

Plaintiff suggests that it was the duty of defendant to make requests for specific findings on the question of want of mutuality, but we do not think such procedure was necessary. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. provides: "In all actions tried upon the facts without a jury * * *. Requests for findings are not necessary for purposes of review. * * *"

Plaintiff further contends that in defendant's statement of points on appeal there was no specific reference to the defense based upon invalidity of the contract for want of mutuality. While the statement of points on appeal might well have been more specific, we think it sufficiently raised the questions of claimed invalidity of the contract in a manner to include this defense. The point was ably argued before us. We think we are at liberty to pass upon the question and that it is our duty to do so.

The question of damages had interesting angles which both sides argued ably, but as we hold that the contracts are invalid, we do not reach a decision on that question.

Reversed.