NASHVILLE ELECTRIC SUPPLY COMPANY, INC., Plaintiff-Appellee,

v.

KAY INDUSTRIES, INC. and Donald R. O'Guin, an Individual, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

July 25, 1975.

Certiorari Denied by Supreme Court Dec. 22, 1975.

Alan L. Saturn, Griffith & Stokes, Nashville, for plaintiff-appellee.

Wilson N. West, Nashville, for defendants-appellants.

## OPINION

TODD, Judge.

The plaintiff, Nashville Electric Supply Company, Inc., sued Kay Industries, Inc., as principal obligor, and Donald R. O'Guin, as guarantor, for merchandise sold to said Kay Industries, Inc., in the amount of $10,775.26. The Chancellor rendered judgment against both defendants for $10,775.26. Kay Industries, Inc., did not appeal. Donald R. O'Guin has appealed and assigned the following errors: .

I.

"The Court erred in not holding that the required signature of either the Defendant Donald R. O'Guin or that of Jim O'Guin in the letter of April 5, 1973 as

being an absolute condition precedent to a personal guarantee of payment on the part of Donald R. O'Guin.

## II.

"The Court erred in construing the letter of May 23, 1973 as being a guarantee by default of the indebtedness owed by Kay Industries to Nashville Electric Supply, and further by not adopting the plain and unambiguous words in said letter."

On or about March 29, 1973, plaintiff received an order from Kay Industries, Inc., which corporation had no established line of credit with plaintiff. On said date, plaintiff's credit manager telephoned the appellant, O'Guin, and offered to fill the order if he, O'Guin, would guarantee payment. Mr. O'Guin replied that he would guarantee "the account" and that he would confirm by letter. Thereupon, the order was filled and shipped to Kay Industries, Inc.

Thereafter plaintiff received from appellant a letter dated April 5, 1973, and stating the following:

"This letter is to confirm that I agree to be personally liable for all credit extended to Kay Industries at Centerville, Tennessee. I request that no shipment be made without purchasing order bearing my signature or Jim O'Guin."

Subsequently, other orders were received and shipped to Kay Industries. Copy of each invoice was mailed to appellant, but he denies receiving them. None of said orders was supported by a purchase order as requested in the letter quoted supra.

On May 23, 1973, appellant wrote a letter to certain individuals connected with Kay Industries, Inc., in which he stated:

"This letter is to further clarify your agreement on the payment of all outstanding bills owed by Kay Industries that I have personally guaranteed. Our agreement is you will deliver to American Auto, Camper and Mobil Home, Incorporated, at dealer's cost, enough mobil homes to equal the dollar value of the outstanding accounts. The creditor and the amount owed is as follows:"

The list following the above quotation includes the name of plaintiff and the amount, $14,222.97. Subsequently a $4,097.18 payment was made by check signed "Kay Industries, Inc., Donald O'Guin, Sr." This would have reduced the debt from $14,222.97 to $10,125.97. The difference between this latter amount and $10,775.26, the amount sued for, and the amount of the judgment is not explained in the record, however, it appears that no issue was made as to the amount due.

Appellant's defense and appeal are based upon the proposition that the true meaning and legal effect of the sentence, "I request that no shipment be made without purchasing order . . ." was and is to fix a condition which limited defendant's guaranty agreement; and, therefore, the failure of plaintiff to secure purchase orders for any of its shipments prevents the guaranty agreement from taking effect.

■ In support of this proposition, appellant points out that the guaranty letter was written without the benefit of skilled legal counsel. Appellant cites *Garner v. Becton*, 187 Tenn. 34, 212 S.W.2d 890 (1948) and *Trimble v. Holley*, 49 Tenn.App. 638, 358 S.W.2d 343 (1962); however, those cases involved the drafting of wills which are unilateral instruments. The present case involves a bilateral instrument in that it was prepared by one party and relied upon by the other party in a substantial business transaction. In the construction of a will, the sole objective is to ascertain the intent of the testator. In the construction of a bilateral contractual instrument, the objective must be the ascertainment of the mutual intent of the parties or, if the parties did not have the same understanding of the words used, to determine the more reasonable meaning which should have been intended by the parties.

Appellant cites *McClure v. Keeling*, 163 Tenn. 251, 43 S.W.2d 383 (1931), (a will case) for the proposition that "it is intended that every word have some meaning." In

the present case, the words, "I request" do indeed have a meaning, but not that which appellant now insists. The word, "request" does not ordinarily imply any form of compulsion.

"Request, v. To ask for something or for permission or authority to do, see, hear, etc., something; to solicit; and is synonymous with beg, entreat, and beseech. *Artificial Ice & Cold Storage Co. v. Martin*, 102 Ind.App. 74, 198 N.E. 446, 449. (In) its ordinary or natural meaning when used in a will, is precatory and not mandatory. *Byars v. Byars*, 143 Tex. 10, 182 S.W.2d 363, 364, 366."—Black's Law Dictionary, Fourth Edition, p. 1468.

"Request v. . . . express a wish or desire . . . to ask for . . ." Webster's Third New International Dictionary.

In *Comford v. Cantrell*, 177 Tenn. 553, 151 S.W.2d 1076 (1941), a will case, the Supreme Court reviewed a number of authorities and concluded that,

"The words 'request,' 'desire,' and the like, do not naturally import a legal obligation."

If such is the rule in respect to wills, then it is applicable even more strongly to bilateral instruments where another party acts upon the commonly accepted meaning of the words.

Appellant cites *Bright v. McKnight*, 33 Tenn. (1 Sneed) 158 (1853), where *no* condition was attached to a guaranty, and the Court enforced the same. The Court said:

"In pursuance of this view, it was decided by the Supreme Court of the United States, in *Drummond v. Prutman [Prestman]*, 12 Wheat. [25 U.S.] 515 [6 L.Ed. 712], that a guarantor shall be held bound to the full extent of what appears to be his engagements, and the rule in expounding these undertakings is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit. Fell on Guar., ch. 5, p. 127; 12 East, 227.

"No injury can result from this doctrine, as it is in the power of guarantors to make their obligation dependent upon notice, demand, or any other condition they see proper, for their own protection and safety.

"It would be difficult to select words more direct, positive, and unconditional than those used in the present case. The contract of Moore was before them, set out in all its terms, and their undertaking written upon it with express reference to its contents.

"It is, then, an absolute present guaranty, complete in its terms, and took effect as soon as it was acted upon by the plaintiff, to the extent of all the books delivered and not accounted for by Moore. It was not limited to any particular number of books, or books to be delivered in any specified time, so as to make it a limited guaranty, but it extended to all that might be delivered under that contract, and was, therefore, what is called a continuing guaranty. In such a case, the defendants would be bound until they gave notice to the plaintiff that they would be no longer liable." 33 Tenn. (1 Sneed) pp. 168, 169.

■ In the view of this Court, the defendant, who wrote the letter of guaranty, was free to attach any conditions thereto which he might desire. He could have used the expressions "but only on condition . . . .," or "this applies only to . . .," or simply "I agree to be personally liable for purchases of Kay Industries on purchase order signed by me or Jim O'Guin," or many other similar expressions clearly understandable by minds untrained in the law. This, he did not see fit to do, and his words must be interpreted by the Courts as ordinary businessmen (including plaintiff) would interpret them.

Appellant cites a number of authorities from other jurisdictions none of which are controlling in the present case because none involves a contractual obligation involving the words, "I request." The use of the

word "request" in an instruction to a visitor, or subordinate, or in a will is not equivalent to its use in a letter assuming a contractual obligation.

Appellant's argument admits the letter of guaranty, but insists that "it was his intention . . . that no shipment be made without the purchase order . . . ."

■ In the interpretation of contracts, it is the intention of the *parties*, that is *both parties*, which must be ascertained; and, in this respect, if the language of a written instrument is clear and unambiguous, the court must interpret it as written, rather than according to the unexpressed intention of one of the parties. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955).

Ordinarily, words used in contracts are given their usual, natural and ordinary meaning. *Moore v. Life & Casualty Ins. Co.*, 162 Tenn. 682, 40 S.W.2d 403 (1931); *Edelen Transfer & Storage Co. v. Willis*, 16 Tenn.App. 99, 66 S.W.2d 214 (1934).

■ Even if it should be conceded that there is room for interpretation of the words, "I request," the rules of interpretation require that the construction be adverse to the defendant who selected and used the words himself. Language of a contract will be construed most strongly against the party who drew it. *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590 (1968); *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512 (1962).

■ Words of a guaranty are to be taken as strongly against the guarantor as the sense will permit. *Hassell Hughes Lumber Co. v. Jackson*, 33 Tenn.App. 477, 232 S.W.2d 325 (1949) and authorities cited therein.

Moreover, defendant's letter of May 23, 1973, supra, admitting that he had personally guaranteed plaintiff's account, constitutes an admission which must be considered in interpreting his prior letter of April 5, 1973. *Garner v. American Home Assur. Co.*, 62 Tenn.App. 172, 460 S.W.2d 358 (1969); *Springfield Tobacco Redryers Corp. v. City of Springfield*, 41 Tenn.App. 254, 293 S.W.2d 189 (1956); *Calcasien Paper Co. v. Memphis Paper Co.*, 32 Tenn.App. 293, 222 S.W.2d 617 (1949). This rule is applicable to the negotiations of the parties prior to the contract. *Bailey v. Brister*, 49 Tenn.App. 191, 353 S.W.2d 564 (1961).

The circumstances under which the letter of April 5, 1973, was written militate against the interpretation urged by appellant. It is uncontroverted that the guaranty by defendant was oral in its original form and included no reservation as to purchase orders. The first order was actually shipped on said oral guaranty without a purchase order or demand for same.

The obvious reason for any provision regarding purchase orders would have been to assure that only necessary and proper orders were received and shipped. No question whatsoever is made as to the necessity or propriety of any of the purchases.

■ In short, this Court is satisfied that the legal and enforceable intention of the parties was that appellant should be unconditionally liable to plaintiff for all purchases made by Kay Industries, Inc., at any time before termination of the guaranty; and the "request" for purchase orders was a mere expression of a desire which, if ignored, might result in refusal to continue the guaranty as to future purchases.

Therefore, the decree of the Chancellor is affirmed. Costs of this appeal are taxed against appellant.

Affirmed.

SHRIVER and DROWOTA, JJ., concur.