## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **REGINALD FENTRESS,** | ) | Shelby County Circuit Court |
|  | ) | No. 52091 T.D. |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9601-CV-00010 |
|  | ) |  |
| **MEMPHIS HOUSING AUTHORITY,** | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert A. Lanier, Judge**

**FILED**

**Feb. 3, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**William A. Jeter**,
GLASSMAN, JETER, EDWARDS & WADE, P.C., Memphis, Tennessee
Attorney for Plaintiff/Appellant.


**Gregory L. Perry**, Memphis, Tennessee
**Mark Beutelschies**, Memphis, Tennessee
Attorneys for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)
**HIGHERS, J.** : (Concurs)

Appellant, Reginald Fentress (Fentress), appeals from the summary judgment entered by the trial court in favor of the appellee, Memphis Housing Authority (MHA). The issue before us is whether the trial court was correct in doing so upon finding, as a matter of law, that Fentress was not entitled to a grievance hearing prior to his termination of employment with MHA. For the reasons expressed hereafter, we affirm.

Fentress began his employment as a security officer with MHA on September 5, 1990. The position was federally funded by the Hurt Village Public Housing Drug Elimination Program Grant. A "Job Posting Notice" regarding the position indicated that it was "Grant Funded; Approx. 24 mos." In August 1991, the Department of Housing and Urban Development (HUD) ceased funding for the position. Fentress' employment under the grant was then terminated on October 24, 1991 to fill a permanent position as security officer with the appellee effective that day. On March 20, 1992, MHA terminated Fentress' services, prompting the present action.

The complaint alleges, *inter alia*, that Fentress' termination was "without just cause" and in breach of the contract of employment between the parties, the "Manual of Operations" (Manual). MHA moved to dismiss the complaint or, alternatively, for summary judgment, asserting that Fentress was at all times an employee at will who could be terminated with or without cause; that the Manual was a "unilateral statement of operating procedures" and never intended as a contract or, in the alternative, that Fentress was terminated for cause pursuant to the Manual; and finally, that Fentress' discharge during his initial employment probationary period did not constitute a "grievance" under the Manual, citing specifically to Section 208(A)(4). In response to MHA's request for admissions, Fentress admitted that HUD terminated funding for the position for which he was hired under the Hurt Village Drug Elimination Program Grant and that on October 24, 1991, he was terminated from that position "to fill a permanent position as Security Officer which went into effect the close of business on October 23, 1991.[1]

In ruling, the trial court found that the parties agreed that the Manual was supplied

---

[1]Various other discovery materials, both in support of and in opposition to the motion, were presented to the trial judge which, in light of our decision, will not all be addressed in detail.

to Fentress by MHA at the time of his employment, and that for purposes of the motion, it would be considered as forming a part of the employment contract between the parties, even though MHA had not conceded such fact. The court proceeded to interpret the Manual as affording no rights to Fentress for a grievance panel hearing prior to termination. The court found that although Fentress was in the position of a regular employee at the time of his final termination, he had not completed a six month probationary period as required under the Manual and was, in effect, an employee at will.[2]

Fentress frames the issue on appeal as "[w]hether the trial court erred in concluding that [he] was not entitled to a grievance procedure before being terminated, even though [he] had been employed by [MHA] in excess of the six months required by the Manual of Operations." As did the trial court, we shall consider the Manual as forming a part of the contract of employment between these parties for purposes of review. We do so on the authority that on a motion for summary judgment, all evidence must be viewed in a light most favorable to the motion's opponent and all legitimate conclusions of fact must be drawn in their favor. A summary judgment is to be granted by the trial court and sustained by the court of appeals only when there is no disputed issue of material fact. *White v. Methodist Hosp. South*, 844 S.W.2d 642, 645 (Tenn. App. 1992).

Resolution of the issue before us necessarily entails a proper construction and interpretation of the Operations Manual. We begin by setting forth those provisions we consider pertinent for such purpose. Chapter II, Section 208(A) sets forth three "categories of employment" at MHA: full-time regular, part-time regular and temporary. Full-time regular employment refers to "those employees scheduled to work forty (40) hours per week and not less than thirty four (34) hours per week in a budgeted position to which appointed." Temporary employment denotes "those employees who are hired to work for a specific period of time or to complete a specifically assigned task, after which their temporary employment will terminate except in situations where the Executive Director deems it necessary to continue their employment (normally a reassignment)." This section continues that "[t]emporary employees may work any number of hours up to forty (40) per week," but are not entitled to any fringe benefits.

_____

[2]The summary judgment also encompasses the trial court's ruling in regard to Fentress' allegation that Appellee is liable for the tort of outrageous conduct. The court's ruling thereto is not at issue on this appeal.

The crux of this litigation concerns the following language found at Section 208(A)(4):

> Probationary Period - All new employees, except TEMPORARY employees, shall be required to serve a period of probation during the initial six (6) months of employment with MHA. (MHA Probationary Period is discussed also in Section 303, C, 3, found on page 51 of the Manual).
>
> . . . .
>
> NOTE: During the initial employment probationary period an employee may be DISCHARGED without such discharge action constituting a grievance.

Chapter III, Section 304(B) establishes that the function of the Personnel Grievance Hearing Panel is "to hear grievances . . . brought before it, by and on behalf of *regular* administrative employees." (Emphasis added.) Finally, Section 303(C)(3) and (5) provide:

> 3. Six Month Probationary Period. Employees who receive promotions, demotions, or transfers to different job classifications, within MHA, shall be required to serve a six-month probation.
>
> . . . .
>
> 5. A new employee who is unable to fulfill the requirements of the job position he/she fills, during the six (6) months job classification period shall be terminated or, if possible, reclassified to another position, with the approval of the Executive Director. In the new position a new six (6) months probationary period begins.

We are to interpret the contract between these parties according to its plain terms. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). The entire contract is to be considered in determining the meaning of any or all of its parts, for one clause may modify, limit or illuminate another. *Cocke County Bd. of Highway Commissioners v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *State ex rel. Comm'r v. Teasley*, 913 S.W.2d 175, 179 (Tenn. App. 1995). The words expressing the parties' intentions are to be given their usual, natural and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985). If the instrument is determined clear and unambiguous, the court must interpret it as written. *Nashville Elec. Supply Co. v. Kay Indus., Inc.*, 533 S.W.2d 306, 310 (Tenn. App. 1975).

Fentress contends that under the Manual's provisions as set forth above, he is entitled to a grievance hearing prior to termination. He asserts that at the time of his dismissal he was a full time regular employee and not a new employee subject to the probationary period. He states that he was merely "transferred" from a temporary job status to a permanent position and that, although he was serving a six-month probationary period at that time, it was not during his "initial" employment. Fentress submits that pursuant to the Manual, his "temporary" employ exempted him from serving a probationary period during the initial six months of his employment and, as such, he should not be required to commence serving an "initial employment probationary period" after having worked for MHA over six months. He asserts: "[t]here is no doubt that a literal reading of the [Manual] clearly indicates that, even if you are on a six month probationary period, if it is not your 'initial' six months of employment with [MHA], you are entitled to a grievance in accordance with the Manual."

Appellee's position to the contrary is that Fentress was initially hired in a temporary grant funded position which afforded him no grievance rights or benefits pursuant to the Manual and that once that position terminated, Fentress was transferred to a regular full time position in which he had only served five months before being terminated. Thus, it is contended that Fentress, having failed to reach the end of the six month probationary period required of all regular employees, was not entitled to a grievance hearing before termination.

Both parties assert that the Manual of Operations is unambiguous. We agree. An ambiguity in a contract does not arise merely because the parties differ as to its interpretation. *Oman Constr. Co. v. Tennessee Valley Auth.*, 486 F.Supp. 375, 382 (M.D. Tenn. 1979). Considering the aforementioned legal principles of contract construction, we hold that the unambiguous language of the contract does not entitle Fentress to a grievance hearing before being terminated from his employment. The gist of Fentress' argument is that his final termination came after the initial six months of his employment beginning September 5, 1990 and since temporary employees are not required under the Manual to serve a period of probation, he should not be subject to it after employment for a total time of approximately one and one-half years. From a reading of the entire contract, however, it is clear that Fentress was considered a "new" employee serving an initial six month probationary period as of October 24, 1991, the date on which he became a "regular"

employee. The Manual clearly distinguishes between those employees holding "temporary" and "regular" positions, favoring the latter. The Manual provides that the "effective date of employment" for purposes of earning seniority rights and annual and sick leave "shall be the last date the employee started to work for MHA in a regular status." We agree with the trial court's apt statement that "[i]t would be a strange interpretation of the contract to give temporary employees more rights than regular employees."[3] Such would be the result on acceptance of Fentress' position. We believe interpretation of the contract in the manner urged by Fentress would result in a strained and unreasonable construction.

Fentress does not contend on appeal that his position with MHA from September 5, 1990 to October 24, 1991 was anything other than "temporary." From that date forward, however, until his final termination, Fentress was considered a "regular" employee in accordance with the Manual. At this time, he was "initially" employed in his new "regular" position which began the effective date of his employment for the purpose of obtaining seniority rights and other rights afforded by MHA. We believe that under the plain wording of the contract, this period constituted an "initial" six month probationary period for Fentress, distinguishing his rights from those temporary employees who may not be employed the full six months, with the ultimate objective of favoring his status of employment (affording more benefits) than those considered temporary, should he successfully complete the probationary period. We believe this the only fair and reasonable construction of the contract giving effect to its plain wording.

A summary judgment is appropriate on claims capable of resolution on legal issues alone. *Marriott Fed. Credit Union v. Harris*, 897 S.W.2d 723, 725 (Tenn. App. 1994). The judgment of the trial court is, accordingly, affirmed and this cause dismissed. Costs are assessed against the appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____

[3]We further agree with the trial court's finding that the Manual does not require a six month probationary period of temporary employees because their employment may not be needed for that long.

_____

CRAWFORD, P.J., W.S. (Concurs)



_____

HIGHERS, J. (Concurs)